IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNIVERSAL CASUALTY COMPANY                                    PLAINTIFF

vs.                                    NO: 4:08CV01822BSM

TRIPLE TRANSPORT, INC.                                        DEFENDANT

## ORDER

Plaintiff Universal Casualty Company ("Universal") brings this declaratory judgment action against Triple Transport, Inc. ("Triple Transport") seeking a declaration of rights under a liability policy issued to Triple Transport by Universal. Universal has filed a motion for summary judgment, to which Triple Transport has responded, and Universal has replied. For the reasons stated below, the motion is denied.

## I. BACKGROUND

On March 25, 2008, Sammy Crabtree d/b/a Crabtree Operating Company ("Crabtree") filed a complaint in the Columbia County, Arkansas Circuit Court against Triple Transport for damage to a commercial saltwater disposal well that was allegedly caused by Triple Transport (hereinafter referred to as the "underlying lawsuit.") According to Crabtree's complaint, Edge Petroleum Corporation ("Edge"), which drills and operates gas wells in the Fayetteville Shale area, hired Triple Transport to transport and dispose saltwater that was generated by Edge's gas wells. Triple Transport had previously disposed of the saltwater at Crabtree's commercial saltwater disposal facility, for which Crabtree was paid a designated price per barrel. Crabtree alleges that on August 20 and 21, 2007, Triple

Transport, rather than off loading saltwater in his system, disposed of "hazardous chemicals other than saltwater, including, but not limited to, water contaminated with hydrocarbons, reserve pit water, and what is believed to be drilling mud or oil."  Doc. No. 1-3.  Crabtree contended that the substances caused "significant damage" to his well, which resulted in the well being shut down for about two weeks and needing to be repaired.  *Id.*  Crabtree seeks reimbursement for the costs to repair the well and the lost revenue.  *Id.*

On August 25, 2008, Universal, Triple Transport's insurer, filed a complaint in this court seeking a declaration that it is not required to cover the claims asserted by Crabtree against Triple Transport and that it does not have a duty to defend or indemnify Triple Transport in the underlying lawsuit.

Universal issued a commercial regional trucking policy (the "policy"), policy number TKAR 90071-00, to Triple Transport which was in effect at the time of the underlying incident.  The policy includes Commercial Auto Coverage and Commercial General Liability Coverage.    The Commercial Auto Coverage Part ("CACP") provides in relevant part:

II. SECTION II - LIABILITY COVERAGE

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from ownership, maintenance or use of covered "autos". However, we

> will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or property damage" to which this insurance applies that is caused by the same "accident".

See CACP, Section II,  Doc. No. 10-2. p. 23.  The CACP defines "accident" as "continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage." Section VI, Doc. No. 10-3, p. 5.

The Commercial General Liability Coverage Part ("CGLCP") provides liability coverage for "property damage" if it is caused by an "occurrence" that takes place in the "coverage territory."  Section I, Doc. No. 10-3, p. 24.  Under the CGLCP, "property damage" means "physical injury to tangible property, including all resulting loss of use of that property."  Section V, Doc. No. 10-4, p. 13.  Additional policy provisions are applicable and will be discussed *infra*.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)).  "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving

party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## III.  DISCUSSION

Summary judgment is inappropriate because genuine issues of material fact exist as to whether the policy precludes coverage for the damages sought in the underlying lawsuit.

This case involves construction of an insurance policy and the parties do not dispute that  Arkansas law controls.  *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 455 (8th Cir. 1998) ("State law controls the construction of insurance policies when a federal court is exercising diversity jurisdiction.").  "The language of an insurance policy is to be construed in its plain, ordinary, popular sense." *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 363, 16 S.W.3d 242, 244 (2000).  If the language is ambiguous, the contract is to be construed in favor of the insured and against the insurer. *Elam v. First Unum Life Ins. Co.*, 346 Ark 291,

297, 57 S.W.3d 165, 169 (2001) (finding that "mental illness" was jury question in light of conflicting extrinsic evidence offered by the parties).   "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Id*.

Once the court determines that coverage exists, then it must determine whether exclusionary language within the policy eliminates the coverage. *Norris*, 341 Ark. at 363, 16 S.W.3d at 244.  The general rules of construction also apply to exclusions.  *Castaneda v. Progressive Classic Ins.* Co., 357 Ark. 345, 351, 166 S.W.3d 556, 560 (2004) ("Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language.")   Any ambiguity in an exclusionary clause must be construed strictly against the insurance company and liberally in favor of the insured. *Union Bankers Ins. Co. v. Nat'l Bank of Commerce*, 241 Ark. 554, 557, 408 S.W.2d 898, 900 (1966).

Universal claims that Triple Transport's action was not an "accident" as that term is defined in the policy and that Triple Transport's actions are precluded from coverage by certain policy exclusions.  It also claims that it has neither a duty to defend nor a duty to indemnify under the policy.  The duty to defend is broader than the duty to indemnify. *Mattson v. St. Paul Title Co. of the South*, 277 Ark. 290, 292, 641 S.W.2d 16, 18 (1982). Generally, the duty to defend is determined from the allegations in the pleadings against the insured. *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 347 Ark. 1567, 175-76, 61 S.W.3d

807, 812 (2001).  The "duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage."  *Id.* at 176, 61 S.W.3d at 813.  *See Commercial Union Ins. Co. of America v. Henshall*, 262 Ark. 117, 123, 553 S.W.2d 274, 277 (1977)("The duty to defend is broader than the duty to pay the damages and the duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage.")

In testing the pleadings to determine whether a duty to defend exists, the court resolves any doubt in favor of the insured.  *Murphy*, 347 Ark. at 178, 61 S. W. 3d at 814.  If the complaint in the underlying lawsuit alleges facts which come within the coverage of the policy, then Universal has a duty to defend.

The CACP and CGLCP provide  coverage for property damage caused by an accident. If the court determines that the complaint in the underlying state action does not allege an accident or occurrence, then there is no coverage under the policy.  If the court finds that there is an issue as to whether there was an "accident" or "occurrence," the court determines whether any of the exclusions are applicable.

Universal argues that Triple Transport's act of discharging substances, other than saltwater, into Crabtree's well was not an accident.  The Arkansas courts have defined "accident" to mean "an event that takes place without one's foresight or expectation–an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." *U.S. Fidelity & Guar. Co. v. Cont'l Cas. Co.*, 353 Ark. 834, 845, 120 S.W.3d 556, 563 (2003) (citation omitted).  There is nothing in the underlying complaint, and

-6-

Universal has not presented any evidence, to support a finding that Triple Transport's action in offloading the barrels was expected or done with foresight. Construing the allegations in the complaint in favor of Triple Transport, a jury could find that the offloading of the wrong substance was unintentional or accidental.

Finding that coverage is not precluded under the accident provision, the court must now determine whether certain exclusions bar coverage.  Universal argues that coverage is excluded under the "care, custody or control" exclusion, which provides in pertinent part:  that "'property damage' involving property owned or transported by the 'insured' or in the 'insured's' care custody or control" is excluded.  CACP, Section II, B 6.  It is clear that this provision is not applicable as there is no claim for damage to Triple Transport's property or property in its care, custody or control.

Universal also claims that the policy excludes property damage resulting from Triple Transport's handling of the property.  "[P]roperty damage" resulting from the handling of property "[a]fter it is moved from the covered 'auto' to the place where it is finally delivered by the 'insured'"is excluded. CACP, Section IIB, 7.  According to the allegations in the underlying lawsuit, Triple Transport caused the damage by the offloading and disposal of hazardous chemicals other than saltwater.  Triple Transport was not handling Crabtree's property; it was handling the materials that it disposed of on Crabtree's property.  Therefore, the exclusion does not apply.

Universal argues that coverage is excluded under the "completed operations" exclusion

of the CACP.  Under that provision, "property damage" arising out of work that has been completed or abandoned is excluded.  Work is deemed to be completed at the earliest of the following times: (1) when all of the work called for in the contract has been completed; (2) when all of the work to be done at the site has been completed; or (3) when that part of the work done at the site has been put to its intended use.  CACP, Section IIB, 10.

Nothing in the record indicates that Triple Transport's work was complete once the substances were discharged from the trailer.  The complaint in the underlying action alleges that Triple Transport was hired by Edge to dispose of saltwater generated or produced at Edge's natural gas wells.  A question of fact exists as to whether Triple Transport's activities were ongoing, and therefore Universal has not established that the "completed operations" exclusion applies.

Universal argues that the coverage is excluded by the CGLCP pertaining to damage to property.  The CGLCP excludes coverage for "property damage" to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations. . ."  It also excludes "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."   CGLCP, Sec. I, 2j.  "Your work" is defined as "[w]ork or operations performed by you or on your behalf." CGLCP, Sec. V, 22.  Triple Transport was not working on Crabtree's wells; therefore its work did not damage Crabtree's property.  At the least, there

is a question of fact as to whether this exclusion applies.

Finally, Universal argues that coverage under both the CACP and the CGLCP is excluded under the "pollution" clause. Under these exclusions, "property damage" arising from the actual, alleged, or threatened discharge, dispersal, release or escape of "pollutants" is excluded. The court cannot find that the exclusions are applicable. The Arkansas Supreme Court in *Minerva Enters., Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W. 2d 403 (1993) discussed a pollution exclusion clause similar to the one found in this policy. The court found the definition of pollutants to be ambiguous. It stated:

> The pollution exclusion is a recent innovation of the insurance industry that has spawned considerable litigation. Among the cases we find a group that deals with the definition of pollution. This line of cases supports the premise that the exclusion is intended to prevent persistent polluters from getting insurance coverage for general polluting activities, whether the insured or a third party, and was never intended to cover those who are not active polluters but had merely caused isolated damage by something that could otherwise be classified as a "contaminant" or "waste."

*Id.* at 130, 851 S.W. 2d at 404. *See State Auto Prop. & Cas. Ins. Co. v. Arkansas Dep't of Environmental Quality*, 370 Ark. 251, 258 S.W. 3d 736 (2007) (refusing to overrule *Minerva* and finding that pollution exclusion clause was ambiguous).

There is a fact question as to whether the water containing hydrocarbons, reserve pit water, and drilling mud or oil are "pollutants" as set forth in the policy. Therefore, the record does not support the Universal's position that summary judgment is appropriate because coverage is excluded pursuant to the pollution exclusion clause.

## IV.  CONCLUSION

Universal's motion for summary judgment [Doc. No. 10] is  denied because there are genuine issues of material fact in dispute as to whether the liability policy issued by Universal to Triple Transport covers the alleged damage in the underlying lawsuit.

IT IS SO ORDERED this 13th day of July, 2009.


_____
UNITED STATES DISTRICT JUDGE